IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| REX WAYNE BELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. G-04-169 |
| | § | |
| STARBUCKS U.S. BRANDS CORP. | § | |
| and STARBUCKS CORP. d/b/a | § | |
| STARBUCKS COFFEE COMPANY, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This cause was originally filed on March 17, 2004.  Plaintiff herein sought declaratory relief that his use of "Star Bock" or "Starbock" does not infringe on Defendants' "Starbucks" trademark. He also asked for a judgment that he is not diluting Defendants' trademark under federal or state law or violating unfair competition laws.  Defendants counterclaimed on all issues seeking exactly opposite relief.  At the time of filing, the matter was routinely set for a Rule 16 Scheduling Conference, which occurred on June 2, 2004.  Counsel for both sides appeared and announced ready, and pursuant to agreement of counsel and the Court, the matter was set for non-jury adjudication before the Court, on June 6, 2005.  Such setting was confirmed by a routine Scheduling Order entered by this Court's Magistrate Judge, Hon. John R. Froeschner, on June 9, 2004.  Docket Call was held regarding such trial setting on June 2, 2005, and again counsel for both sides appeared and announced ready for trial.  On that date, again with agreement of counsel, the trial date was adjusted slightly, to commence June 6, 2005.  Trial proceeded non-jury, Hon. Samuel B. Kent presiding,

throughout that day.  At the conclusion thereof, the Court established a post-trial submissions schedule which has been, in all timely respects, complied with.

The Court, having carefully considered all pleadings on file in this matter, having carefully considered and having reviewed the trial testimony of all live witnesses, and having made credibility assessments in regard thereto, having considered and having reviewed exhibits entered in this matter, having carefully considered the Pre-Trial Order, together with all attachments, and the post-trial submissions, hereby enters its Findings of Fact and Conclusions of Law, pursuant to FED.R.CIV.P. 52.

## **FINDINGS OF FACT**

1.      Plaintiff Rex Wayne Bell ("Bell") owns and operates a small, part-time business in Galveston, Texas, operating under the name "The Old Acoustic Café".  This is a small, informal acoustical music venue which is open typically only on Thursday, Friday and Saturday nights. Musicians, typically accompanied by acoustical instruments (guitars and the like) perform.  An admission fee is charged, which Bell generally gives to the entertainers.  His sole source of income in this establishment is from the sale of beer, limited other beverages, limited cold snacks and souvenir items promoting an alcoholic beverage sold only there, identified as "Starbock Beer" and/or "Star Bock Beer".  He is a former musician and very much enjoys his contacts in the music industry and the promotion of young artists.  His beer sales are only an adjunct to those interests.

2.      This Court has jurisdiction over the subject matter of this cause, pursuant to 28 U.S.C.  § 1331 and  § 1338(a), inasmuch as such arises under the Lanham Act, 15 U.S.C.  § 1051 *et seq.* and the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c) and § 1127, 28 U.S.C. § 2201-2202, as well as being a declaratory judgment action arising under the Lanham Act, 15 U.S.C.  § 1051 *et seq.*  Finally, the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), inasmuch as this action is between citizens of different states and the matter in controversy exceeds the sum of

$75,000.00, exclusive of interest and costs.  This Court has jurisdiction over the subject matter of those claims that arise under state law based upon the principals of supplemental jurisdiction, as provided in 28 U.S.C. § 1367, as well as the provisions of 28 U.S.C. § 1338(b), allowing jurisdiction over claims for dilution and unfair competition joined with substantial and unrelated claims under the federal trademark laws.  Jurisdiction has not been contested by any of the parties.  Venue is proper in this Court as well, inasmuch as Plaintiff conducts his business in this Division, indeed only within a few blocks of the courthouse, and Defendants do extensive business in this District and Division.  Venue has not been contested by any of the parties, either.

3.      Bell applied for registration of the "Starbock Beer" trademark with the United States Patent and Trademark Office and the application was subsequently approved and published for opposition.  During the opposition phase, Defendants filed a Notice of Opposition to Bell's application and mailed "cease and desist" letters to Bell alleging that Bell's mark would: cause confusion as to the origin of the parties' respective goods; misappropriate Starbucks' goodwill; and further violate federal, state, and common law dilution principals.  Defendants insisted that Bell immediately cease all use of the "Starbock Beer" trademark, destroy all signage and materials bearing this trademark, and abandon the trademark application.  Pending the resolution of this litigation, the United States Patent and Trademark Office suspended the opposition period and stayed all proceedings regarding Bell's registration application approval.

4.      Defendants have continuously done business under the trademarks and trade names "Starbucks®," "Starbucks® Coffee," and "Starbucks® Coffee Company" since 1971.  The Starbucks® mark is the subject of at least 60 trademark registrations issued by the United States Patent and Trademark Office, and has been similarly registered in more than 130 foreign countries.

5.      Bell filed a Complaint in this action, seeking a declaratory judgment that Bell's use of the "Star Bock Beer" mark in connection with alcoholic beverages is not in violation of any rights Defendants may have pursuant to: the Federal Law of Trademark Infringement as set forth in 15 U.S.C. § 1114; the Federal Law of Unfair Competition as set forth in 15 U.S.C. § 1125; the Common Law of Unfair Competition; the Federal Trademark Dilution Act as set forth in 15 U.S.C. § 1125; and, the Texas Anti-Dilution Statute as set forth in Tex. Bus. & Com. Code Ann. § 16.29 (Vernon 2002).  Defendants Starbucks® U.S. Brands Corporation and Starbucks® Corporation d/b/a Starbucks® Coffee Company ("Starbucks") contest those claims, and have concurrently asserted counterclaims against Bell, alleging: federal trademark dilution, in violation of 15 U.S.C. § 1125(c) and § 1127; federal trademark infringement, in violation of 15 U.S.C. § 1114(1); violation of 15 U.S.C. § 1125(a); violation of the Texas Anti-Dilution Statute, Tex. Bus. & Com. Code Ann. § 16.29 (Vernon 2002); violation of Texas Common Law Trademark Dilution; and, the common law doctrine of unfair competition.  Bell of course contests these counter-claims.

6.      Bell concedes receipt of the cease and desist demands from Starbucks and further concedes that he ignored such; instead retaining counsel and filing suit.  However, beyond continuing to sell the beer that he had on hand at the time of receipt of such notification, and the related memorabilia and small advertising products (caps, t-shirts, etc.), out of his Old Acoustic Café, he has undertaken no other product production, sales or advertising or promotional efforts.

7.      On the other hand, he readily conceded in his trial testimony that he has encouraged his friends in the music industry to favorably mention and endorse Star Bock Beer, that he sought out, benefitted from and encouraged extensive local and national media coverage of this "David vs. Goliath" controversy, and that his ultimate ambition is to be "just as big and successful as Starbucks."

8.      Bell continues to make use, in commerce, of the "Starbock" and/or "Star Bock" logos, but with an important distinction.  In the correspondence and official notifications to and from the United States Patent and Trademark Office, Bell sought a trademark for "Starbock Beer." Currently, and for the last several months prior to temporarily suspending operations shortly after the trial, Bell used a somewhat distinctive and modified logo (Exhibit 1) that has "Star" on one line, "Bock" beneath it, and "Beer" beneath that in red superimposed over a blue star on a white field, in a circular logo, with "Since 2003" immediately below the three words, and in circular form around the outside of the logo, the information "Born in Galveston–The Old Quarter Acoustic Café".  As noted above, this product is sold exclusively at the The Old Quarter Acoustic Café, on a limited number of nights per week, and only in association with the presentation of live musical performances by acoustical artists.  Bell's crowds are of relatively small size, the facility only seating a few dozen people at most, and his patrons tend to be both locals and regulars, for the most part. No Starbucks® Coffee Company products are sold in the facility, and Star Bock Beer is not sold outside the facility.

9.      Bell testified that he had his beer brewed by a contract brewer in Brenham, Texas. He does not know the recipe for the beer or indeed any of its ingredients.  He oversees no aspects of the production of the beer, has no idea actually how it is made, and can only state that the production of his beer is in compliance with state health laws.  Other than that simple statement, he has no knowledge whatever of its contents, preparation, aging, or kegging.  It is sold in draft form, not in bottles or cans.  He had a limited production made in the early stages of this controversy, and once that was sold out, he suspended any further production, awaiting the outcome of this litigation. Tragically, in regard to which the Court expresses its most heartfelt condolences, shortly after the completion of the trial of this matter, local media reported the untimely and regretful passing of

Bell's beloved wife.  Bell has indefinitely ceased operation of the The Old Quarter Acoustic Café and consequently, as a practical (not legal) matter, this entire controversy may have thereby been rendered moot.  The Court does not speculate in that regard, and notes that this information is officially outside the record of these proceedings; but simply cannot rule in the matter without a real world consideration of the overall facts of this case, which certainly includes taking judicial notice of such a significant event affecting not only the life of the Plaintiff, but his economic circumstances as well.

10.    Bell testified that he began the production of his Star Bock Beer in the May-June 2003 time frame, although apparently he was selling a generic, unnamed draft beer prior to that time.  He came up with the name around Christmas, 2002, ordered the beer, and then filed for a trademark on March 1, 2003.  He testified that in conversation with customers and friends, he blended the terms "Lone Star" (which is a Texas-based beer of long standing), and "Shiner Bock" (again referring to one type of beer brewed by the Shiner Brewery in Shiner, Texas, also of long standing).  He claims that by borrowing "Star" from the one and "Bock" from the other, he came up with Starbock Beer.  He claims that it was not his intention then, and has never been, his intention to infringe or unfairly capitalize upon the dominant Starbucks trade name.  While the Court sincerely believes that Plaintiff was innocently motivated at the time he came up with the name and began selling the named beer, given his trial testimony that he very much enjoyed the media attention given to this controversy and that he now wants to be as "big and successful" as Starbucks, the Court has some apprehension that his perceptions may have morphed over the evolution of this controversy into something somewhat less innocent than he originally intended.

11.    Patricia Chapman was presented as the sole Starbucks fact witness.  She is in charge of brand strategy for the Starbucks family of corporations.  She is extremely bright, articulate,

and professional, and appeared remarkably knowledgeable of both her company and the marketplace dynamics affecting her company. Based upon her testimony, this Court believes that Starbucks is a well run, competent and professional corporation. It has an ambitious marketing strategy and has been extraordinarily profitable. She testified that enormous care and effort goes into each of the products Starbucks produces, from original recipe design through final preparation, field testing, market testing, production and marketing. The highest level of quality control goes into each product, and is constantly monitored and maintained. This of course differs markedly from the *ad hoc*, remote and secondhand production of Star Bock Beer. Ms. Chapman also described the "siren" logo that Starbucks uses: a green-and-white circular logo depicting a long-haired woman in the center with the words "STARBUCKS COFFEE" in the outer band. Significantly, the logo differs markedly from that used currently by Bell, as set out in Exhibit 1.

12.     Plaintiff did not present any expert testimony in the case, relying instead on the sole testimony of Plaintiff. Defendants countered with the presentation of a statistical expert, Professor Edward A. Blair, Ph.D. Dr. Blair appeared, as did Ms. Chapman, to be exceptionally articulate, intelligent and professional. He undertook an exhaustive statistical analysis of marketplace responses with regard to potential confusion in consumers having to do with Starbock and Star Bock relative to Starbucks. He found that 25% of consumers believed that "Star Bock" beer was affiliated with Starbucks and that 43% believed the same of "Starbock" beer. He also found that for 48% of consumers, "Star Bock" beer brought Starbucks to mind, and for 58% of consumers, "Starbock" beer brought Starbucks to mind. On the basis of his uncontroverted testimony, the Court is satisfied that there is a significant likelihood of confusion when those two terms are compared to Starbucks. However, the Court is not satisfied with the further conclusion that the distinctive logo currently utilized by Plaintiff, as set out in Exhibit 1, is likely to cause any confusion whatsoever.

In its present form, the logo used by Bell provides for a sufficiently distinctive difference between Starbucks and the Star Bock Beer name, to avoid consumer confusion.  The current logo unequivocally indicates that the product was born in Galveston (not Seattle) in 2003 (not 1971), and is sold in only The Old Quarter Acoustic Café (which sells no Starbucks products whatever).

13.    On the basis of the trial testimony, the exhibits admitted into the record and the remarkably thorough and extensive submissions and arguments of counsel, the Court finds that Bell's sale of Star Bock Beer and related minor promotional items out of The Old Quarter Acoustic Café, in Galveston, Texas, or any subsequently owned local establishment bearing the logo set out in Exhibit 1, and sold in conjunction with the musical activities presented at the Café does not in any way infringe, unfairly compete, dilute or otherwise impugn the Starbucks brands or trademarks.  The Court further finds that the sale and use of that brand, in the logo presented in Exhibit 1, at The Old Quarter Acoustic Café, in Galveston, Texas, or a subsequent local facility is a reasonable business practice.  The Court declines to require Plaintiff to terminate those activities and finds that counter-Plaintiffs have failed in sustaining their burdens of proof as regards any causes of action herein asserted against Plaintiff, pertaining to the sale of Star Bock Beer in that facility, or a subsequent local facility, under the brand name set out in Exhibit 1.

14.    The Court does, however, find that Bell's broader use of the terms Starbock Beer and Star Bock Beer and/or the sale of beer in a more generalized context would likely cause infringement, unfair competition, and dilution to the Starbucks brands and trademarks, and such practices consequently are hereby **PROHIBITED**.

15.    The Court finds, nevertheless, that Defendants have sustained no actual damages arising from any alleged infringement, unfair competition or dilution, and considering the equities and the enormous economic disparity between the parties involved in the case, the Court respectfully

declines to award attorneys' fees or to assess costs.  The Court finds that each party shall bear his or its own taxable costs, expenses and attorneys' fees arising from this litigation.

16.     The Court finds that Bell is authorized to use his Star Bock Beer logo, as presented in Exhibit 1, with regard to the sale of beer and related minor promotional items exclusively at The Old Quarter Acoustic Café, or subsequent <u>local</u> establishment run by Bell.  The Court finds that Bell is **PROHIBITED** from the more generalized use of the term Starbock Beer with regard to sales in any broader venue than The Old Quarter Acoustic Café or a subsequent <u>local</u> establishment.  "Local" is herein defined as Galveston, Texas, Galveston Island,  Galveston County, Texas.

## CONCLUSIONS OF LAW

1.     The first issue is whether declaratory judgment is appropriate.  If an actual controversy does not exist, the Court does not have subject matter jurisdiction.  *See, e.g., Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).   In an intellectual property case, an actual controversy exists "(1) when the declaratory plaintiff has a real and reasonable apprehension of litigation and (2) when the declaratory plaintiff has engaged in a course of conduct that brings it into adversarial conflict with the declaratory defendant."  *Texas v. West Publ'g Co.*, 882 F.2d 171, 175 (5th Cir. 1989).

2.     In this case, an actual controversy exists.  Plaintiff has already engaged in the activity objectionable to Defendants.  At the time this suit was filed, Defendants had taken action against Plaintiff in the trademark registration process and had threatened further legal action against Plaintiff.

3.     Plaintiff first asks for a declaratory judgment that his mark does not infringe Defendants' mark.  Defendants have counterclaimed that Plaintiff's mark does infringe their mark.

> Any person who shall, without consent of the registrant . . . use in commerce any .
> . . colorable imitation of a registered mark in connection with the sale, offering for
> sale . . . or advertising of any goods or services on or in connection with such use is
> likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a
> civil action . . . .

15 U.S.C. § 1114(1).

4.     The preliminary decision of the United States Patent and Trademark Office that no conflicts exist between Starbock and Defendants' mark is accorded some weight, but it is not dispositive.  Even if the USPTO had already granted registration to Plaintiff, this does not mean that Plaintiff necessarily has a right to use the mark.  "The rights to use and register are not identical." *In re E. I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1364 (C.C.P.A. 1973); *see also Elvis Presley Enters., Inc. v.  Capece*, 141 F.3d 188, 194 (5th Cir. 1998).

5.     The owner of the mark must show the validity of the mark and that use of that mark or an imitation of it by the other party is likely to cause confusion.  *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F.Supp. 1513, 1536 (S.D. Tex. 1996).

6.     Defendants have a registered mark.  Registration is prima facie evidence of validity of the mark as to the uses specified in the registration.  *See id*. at 1536-37.  Plaintiff has not offered evidence to rebut this presumption.  Therefore, Defendants meet the first requirement of the statute.

7.     In determining whether likelihood of confusion exists, the Court must consider the following factors:  "(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers,  (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any

evidence of actual confusion."[1]  *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664 (5th Cir. 2000); *see also Elvis*, 141 F.3d at 194.

8.      "The type of trademark refers to the strength of the mark" and its distinctiveness.  *See Elvis*, 141 F.3d at 201.  A mark may be generic, descriptive, suggestive, arbitrary, or fanciful.  *See Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 252 (5th Cir. 1997).  As to coffee, "Starbucks" is either arbitrary or fanciful, categories which receive more protection.  Federal registration is also prima facie evidence of distinctiveness.  *See* 15 U.S.C. §§ 1057(b), 1115(a); *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 545 (10th Cir. 2000).  Defendants also offered evidence as to the strength and pervasiveness of the mark.

9.      Because "Starbucks" is an arbitrary or fanciful mark and because Defendants have shown that it is a very strong and distinctive mark, it is entitled to strong protection.  *See Elvis*, 141 F.3d at 201.

10.      When considering the second factor, the similarity between the two marks, the Court must look at the whole mark, not just one particular feature.  *See Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 171 (5th Cir. 1986).  The "appearance, sound, and meaning" of the two marks must be compared.  *Elvis*, 141 F.3d at 201.  When the words are identical, different pictorial representations may suffice to differentiate the two marks.  *See Sears, Roebuck & Co. v.  Allstate Driving Sch., Inc.*, 301 F.Supp. 4, 13 (S.D.N.Y. 1969).

11.      Here, the difference in "Star Bock Beer" as used in Plaintiff's beer label and the bare

---

[1]This is a non-exclusive list.  Earlier courts also considered the sophistication of the consumers, the quality of the allegedly infringing product, and the likelihood that the owner of the first mark would enter the market occupied by the owner of the second mark.  *See, e.g.*, *Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 257 (5th Cir. 1997)*; Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 171 (5th Cir. 1986); *In re E. I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A. 1973); *Polaroid Corp. v. Polorad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961).

words "Starbock" or "Star Bock" becomes important.  The words "Starbock" and "Star Bock" are very similar in appearance, sound, and meaning to the word "Starbucks."  *See, e.g., Exxon Corp. v. Texas Motor Exch., Inc.*, 628 F.2d 500 (5th Cir. 1980) (finding strong similarity between "Texon" and "Exxon").   However, the "Star Bock Beer" label, with the red and blue coloring, "Born in Galveston" wording, separation of the three words of the name onto three lines, and the large star, is very different in appearance and meaning (and also more different in sound) from the word "Starbucks" and Defendants' "siren" logo.  (Pl.'s Ex. 1; Defs.' Ex. 15.)

12.     The meaning of the words should also be taken into consideration.  Where the words have well known and understood, widely differing meanings, a small difference in spelling or appearance may be sufficient to distinguish them and avoid a finding of confusing similarity.  On the other hand, with coined words which are meaningless so far as the English language is concerned, slight variations in spelling or arrangement of letters are often insufficient to direct the buyer's attention to the distinction between marks.

*Seven-Up Co. v. Tropicana Prods., Inc.*, 356 F.2d 567, 568 (C.C.P.A. 1966).

13.     In this analysis, whether Plaintiff uses "Starbock," "Star Bock," or "Star Bock Beer" is important.   "Starbucks" can certainly be considered a meaningless coined word, as could "Starbock." But "Star Bock Beer" is composed of three common words that have meaning independent of any trademark.  This meaningful combination could easily be distinguished by consumers from the meaningless "Starbucks."

14.     The third factor the Court must consider is the similarity of the products.  Products do not have to be in direct competition to be similar, nor do they have to be nearly identical.  *See Westchester*, 214 F.3d at 666; *Pure Foods v. Minute Maid Corp.*, 214 F.2d 792, 796 (5th Cir. 1954).

15.     Defendants formerly produced a beer in conjunction with another company, and

Defendants now have a Starbucks-branded liqueur on the market.   Defendants do not now produce a beer, nor have they indicated any intention of doing so again in the future.   Defendants' main business, of course, is coffee.   While coffee, coffee liqueur, and beer are all beverages, they are not typically purchased for the same purpose or occasion (unlike, for example, coffee and tea, beer and wine coolers, or lemonade and iced tea).

16.     Whether products are "closely related in distribution and use" helps determine the similarity of the products. *John Walker & Sons, Ltd., v. Tampa Cigar Co.*, 124 F.Supp. 254, 256 (S.D. Fla. 1954), *aff'd* 222 F.2d 460 (5th Cir. 1955).   Plaintiff's and Defendants' products do not currently appear in the same distribution channels, nor do people purchase beer and coffee for the same purpose.   The products are similar enough to make confusion *reasonable*, but not so similar that confusion is automatic.

17.     Fourthly, the Court must consider the identity of retail outlets and purchasers.   "[I]f the parties' goods and services are offered at the same level of distribution and at the same type of facilities, the identity of service factor is met." *Pebble Beach*, 942 F.Supp. at 1545.

18.     Plaintiff's product is currently offered only at his specific-function "acoustical" bar. Defendants offered no evidence that their products are sold at bars (although their liqueur may be available at some bars, it is undoubtedly not available at Plaintiff's bar).   Neither Party offered evidence as to the identity of purchasers.   At this time, there is no evidence that the products share a common pool of retail outlets and purchasers.

19.      The fifth factor in the likelihood of confusion analysis is the identity of advertising media.   Even though the Parties do not have to advertise on the same scale for media to be identical, there must be evidence that "the parties aim their advertising campaigns at the same region and the same consumers." *Pebble Beach*, 942 F.Supp. at 1546.

20.     Defendants do advertise in the Galveston area, as they do throughout the United States and the world.  Plaintiff has received national publicity due to this litigation exercise, but he does not advertise other than through promotional items distributed at his bar and through his website.  Neither Party offered probative evidence on whether they targeted the same consumers. While some consumers have probably seen advertisements for both Defendants' and Plaintiff's products, there is no evidence that the Parties have *targeted* the same consumers.

21.     Next, the Court must consider the intent of the alleged infringer.  If intent to benefit from the mark of another is found, "it may provide compelling evidence of a likelihood of confusion."  *Oreck*, 803 F.2d at 173; *see also Elvis,* 141 F.3d at 203; *Sunbeam*, 123 F.3d at 258. Intent to confuse can also be described as "intent to benefit from the goodwill associated with a protectable mark."  *Pebble Beach*, 942 F.Supp. at 1546.

22.     Plaintiff has offered an explanation of how he came up with the name—combining "Lone Star" and "Shiner Bock"—that is free from any intent to infringe Defendants' mark.  While Defendants have shown that Plaintiff intended to benefit from the publicity surrounding this trial and the trademark registration proceedings, this demonstrates only that Plaintiff intended to benefit from *allegations* of infringement, not from actual infringement.  There is no evidence to support a conclusion that Plaintiff intended for anyone to buy his product because of a mistaken association with Defendants' mark, nor is there evidence that Plaintiff created the mark with an intent to infringe.

23.     Finally, the Court must consider evidence of actual confusion.  Defendants' expert, Dr. Edward Blair, properly examined consumer response to the similarity between "Starbock" and "Star Bock" on one hand and "Starbucks" on the other.  Even if the words sound alike, "[t]he fact that one mark may bring another mark to mind does not in itself establish likelihood of confusion

as to the source." *In re P. Ferrero*, 479 F.2d 1395 (C.C.P.A. 1973); *see also Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 462 (7th Cir. 2000).

24.    Blair asked consumers both questions:  whether "Starbock" or "Star Bock" brought to mind another company and whether they believed it to be affiliated with another company.  He found that 25% of consumers believed that "Star Bock" beer was affiliated with Starbucks and that 43% believed the same of "Starbock" beer.  He also found that for 48% of consumers, "Star Bock" beer brought Starbucks to mind, and for 58% of consumers, "Starbock" beer brought Starbucks to mind.  (Defs. Ex. 14a.)

25.    These percentages suffice to show a significant level of actual confusion.  *See, e.g., Exxon*, 628 F.2d at 507 (finding 15% association significant); *Tiffany & Broadway, Inc. v. Comm'r of Patents & Trademarks*, 167 F. Supp. 2d 949, 955 (S.D. Tex. 2001) (finding 15% association significant).

26.    The similarity must be judged from the perspective of a consumer who does not have the opportunity to see the products side-by-side.  *See,  e.g., Gen. Adjustment Bureau, Inc., v. Fuess,* 192 F.Supp. 542, 547 (S.D. Tex. 1961).  By presenting consumers with the word "Starbock" or "Star Bock" but not showing them any representation of "Starbucks," Blair fairly tested this reaction.

27.    The survey also met the other requirements of the Fifth Circuit, such as asking why consumers associated the mark with Defendants and drawing from a pool of consumers likely to purchase beer.  *See Exxon*, 628 F.2d at 507.  Therefore, the results of the survey should be given great weight in the Court's analysis.  *Id*. at 506-507.

28.    Defendants have shown evidence of significant actual confusion between the words "Star Bock" as used for beer and their "Starbucks" mark.  Defendants have also shown evidence of significant actual confusion between the word "Starbock" as used for beer and their "Starbucks"

mark.

29.     The Court finds that Plaintiff's use of the word "Starbock," as presented in Plaintiff's trademark application, and his use of "Star Bock" in word form without the word "beer" or any design elements, manifestly infringes Defendants' mark.  The words "Starbock" or "Star Bock" and "Starbucks" are remarkably similar in sight and sound.  Defendants have presented uncontroverted and credible expert testimony showing that consumers are likely to believe that a beer called "Starbock" or "Star Bock" is connected to Defendants.  Although Plaintiff's and Defendants' products are not identical, the fact that both are beverages adds to the likelihood of confusion. Plaintiff's small-guy-against-behemoth-corporation theme starkly conflicts with his trial testimony unequivocally expressing his ambitious desire to make his beer a national product; such a national market would also increase the likelihood of confusion and interference with Defendants' mark.

30.     However, the Court finds that Plaintiff's use of his "Star Bock Beer" logo, as presented in Plaintiff's Exhibit 1, does not infringe Defendants' mark.  Defendants did not present evidence of actual confusion or the likelihood of confusion between the logo and Defendants' mark "Starbucks" or Defendants' "siren" logo.  Plaintiff's logo is sufficiently different from Defendants' mark.  But the Court's finding only applies to Plaintiff's current use of this logo on beer and a small amount of promotional items available only at his bar (or any subsequent local establishment owned or operated by Plaintiff) in Galveston, Texas.  Given Plaintiff's current limited use of the logo; the minute, local channels of distribution and sale; the identity of a relatively small specific interest group of acoustical music consumers; and the identity of modest and bar-activity-specific advertising media are sufficiently different from those used by Defendants so as not to cause a strong likelihood of confusion, or indeed any realistic confusion at all.

31.     Plaintiff next asks for a declaratory judgment that he has not engaged in unfair

competition under the Lanham Act, 15 U.S.C. § 1125(a).  Defendants counterclaim that Plaintiff has

violated this statute.

> Any person who, on or in connection with any goods or services, or any container for
> goods, uses in commerce any word, term, name, symbol, or device, or any
> combination thereof . . . which-
> (a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,
> connection, or association of such person with another person, or as to the origin,
> sponsorship,  or approval of his or her goods, services, or commercial activities by
> another person . . . shall be liable in a civil action . . . .

15 U.S.C. § 1125(a).

32.     "The same facts which support an action for service mark infringement also support

claims for  . . . Lanham Act unfair competition."  *Pebble Beach*, 942 F.Supp. 1554.  The likelihood

of confusion analysis is the same.  *See id; see also Daddy's Junky Music v. Big Daddy's Family*

*Music,* 109 F.3d 275, 288 (6th Cir. 1997); *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*,

659 F.2d 695, 703 (5th Cir. Unit A, 1981).

33.     As discussed above, Plaintiff's use of the mark "Starbock" or "Star Bock" creates a

likelihood of confusion, but his use of the "Star Bock Beer" logo (as presented in Plaintiff's Ex. 1.)

on beer and a small amount of promotional items in his bar in Galveston, Texas does not create such

confusion.  Therefore, his use of "Starbock" or "Star Bock" constitutes unfair competition under the

Lanham Act, but his use of the "Star Bock Beer" logo does not.

34.     Plaintiff also asks for a judgment that he has not violated the common-law

prohibition on unfair competition.  Again, Defendants counterclaim that Plaintiff has engaged in

common-law unfair competition.  "Unfair competition . . . is a tort and is governed by the law of the

state wherein the cause of action arises."  *Jud Plumbing Shop On Wheels, Inc. v. Jud Plumbing &*

*Heating Co.*, 695 S.W.2d 75, 78 (Tex. App.–San Antonio 1985, reh'g denied).

35.     In Texas, unfair competition arises when "deception would naturally and probably

result" from the use of the similar mark, or when "the public [is] likely to be deceived or confused." *Id*.  Neither fraudulent intent nor actual deception must be shown.  *See id.*  The mark must have acquired a secondary meaning in order to receive protection. *See Hudgens v. Goen*, 673 S.W.2d 420, 423 (Tex. App.–Ft. Worth 1984, writ ref'd n.r.e.).

36.   Defendants' mark has acquired sufficient secondary meaning to receive protection.  The word "Starbucks" is a meaningless term that, through extensive advertising and successful sales, has come to be strongly associated with Defendants' products.  Defendants therefore meet the first prong of the test.

37.   As to the likelihood of confusion, the same standards apply as with the trademark infringement claims.  "A trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'"  *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App.–Austin 2001, writ denied) (quoting *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex. App.–Houston [14th Dist.] 1992, no writ)).

38.   Therefore, as explained above, Plaintiff's use of "Star Bock" and "Starbock" constitute unfair competition because it is likely that consumers will confuse those words with "Starbucks."  However, Plaintiff's use of his "Star Bock Beer" logo (as presented in Plaintiff's Ex. 1.) under the localized and limited conditions described above is not likely to cause consumer confusion and does not constitute unfair competition under Texas law.

39.   Next, Plaintiff asks for a judgment that he is not diluting Defendants' mark under the federal trademark dilution statute.  Defendants counterclaim that Plaintiff's mark does dilute their mark.  "The owner of a famous mark shall be entitled . . . to an injunction against another person's commercial use in commerce of a mark or trade name, if such use . . . causes dilution of the

distinctive quality of the mark . . . ." 15 U.S.C. § 1125(c). As the record shows, Defendants' mark is undoubtably famous and therefore qualifies for protection against dilution.

40.    Dilution is:

the lessening of the capacity of a famous mark to identify and distinguish goods and services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) the likelihood of confusion, mistake, or deception.

15 U.S.C. § 1127.

41.    According to the Supreme Court, this statute "unambiguously requires a showing of actual dilution." *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433, 123 S. Ct. 1115, 1124, 155 L. Ed. 2d 1 (2003). The Supreme Court held that "at least where the marks at issue are not identical, the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actual dilution." *Id.*

42.    Defendants have produced evidence that a significant percentage of consumers surveyed believed that a beer called "Starbock" or "Star Bock" was put out by, affiliated or connected with, or approved or sponsored by Defendants. This evidence goes beyond a mere mental association. It shows that Plaintiff's mark lessens Defendants' ability "to identify and distinguish goods and services." *Id.* at 434, 123 S. Ct. at 1125.

43.    Therefore, Plaintiff's use of "Star Bock" and "Starbock" does dilute Defendants' mark under federal law. However, Defendants have not produced <u>any</u> evidence that Plaintiff's use of his "Star Bock Beer" logo, as presented in Plaintiff's Ex. 1, actually dilutes their mark. Because the Supreme Court specifically requires this evidence to sustain a finding of dilution, the Court finds that Plaintiff's use of his Exhibit 1 logo does not dilute Defendants' mark.

44.    Finally, Plaintiff asks for a declaratory judgment that he has not violated the Texas

Anti-Dilution Statute.  Defendants counterclaim that he has either violated the statute or the common

law prohibition on dilution.  The statute states:

> A person may bring an action to enjoin an act likely to injure a business reputation
> or to dilute the distinctive quality of a mark registered under this chapter or Title 15,
> U.S.C. . . . regardless of whether there is competition between the parties or
> confusion as to the source of goods or services.

Tex. Bus. & Com. Code Ann. § 16.29 (Vernon 2002).

45.     The Fifth Circuit has determined that a mark need not be "famous" to fall within

this statute as long as it is "distinctive."  *Advantage Rent-A-Car, Inc., v. Enterprise Rent-A-Car,*

*Inc.*, 238 F.3d 378, 381 (5th Cir. 2001).  This distinguishes the statute from the federal law.

Defendants' registration of the mark is prima facie evidence of distinctiveness.  *See Pebble Beach*,

942 F.Supp. at 1536-37.

46.     In contrast to federal law, state law only requires that dilution be "likely," not

actual.  Tex. Bus. & Com. Code Ann. § 16.29 (Vernon 2002).  This dilution can occur by blurring,

which refers to a lessening of the mark's ability to distinguish between brands, or by tarnishing,

which refers to a diminishing of the good reputation of the mark.  *See, e.g., E. & J. Gallo Winery v.*

*Spider Webs Ltd.*, 129 F. Supp. 2d 1033, 1038 (S.D. Tex. 2001).

47.     The junior mark must be similar to the senior mark for dilution to occur.  *See id.*

at 1038 (quoting *Polaroid Corp. v. Polaraid, Inc*., 319 F.2d 830, 836 (7th Cir. 1963)).  Plaintiff's

and Defendants' marks are sufficiently similar to meet the threshold requirement for a dilution claim.

48.     Defendants' evidence on the likelihood of consumer confusion between Plaintiff's

use of "Star Bock" and "Starbock" and their mark certainly meets the lower state-law test of "likely"

dilution by blurring, but Defendants have not produced <u>any</u> evidence that Plaintiff's use of the "Star

Bock Beer" logo, as presented in Plaintiff's Ex. 1, dilutes or is likely to dilute their mark.

49.    While Defendants questioned Plaintiff on his lack of personal control of the quality of his product and their own corporate representative on the importance of the premium reputation of their products, Defendants did not produce any evidence that Plaintiff's product is actually inferior such that Plaintiff's use of a similar mark would tarnish the reputation of Defendants' mark.

50.    Therefore, Plaintiff's use of "Star Bock" or "Starbock" violates Tex. Bus. & Com. Code Ann. § 16.29 (Vernon 2002) because this use dilutes Defendants' mark by blurring, but his use of the "Star Bock Beer" logo as set out in Exhibit 1 does not violate the statute.

51.    The Court **GRANTS** Defendants' request for a permanent injunction against Plaintiff's use of the mark "Starbock" or "Star Bock," except for his use of "Star Bock Beer" as used in his logo presented in Plaintiff's Exhibit 1 on beer sold in his Galveston bar (or any other local establishment Plaintiff may own or operate in the defined Galveston area) and on a reasonable amount of promotional items available exclusively at his bar.  As Defendants have not asked for any money damages, none are granted.

52.    The Court **DENIES** Plaintiff's request for the Court to cancel Defendants' trademarks.  This request is wholly unfounded in fact and law.

53.    15 U.S.C. § 1117(a) states that when a violation of 15 U.S.C. § 1125(a) has been found, the plaintiff is entitled, "subject to the principles of equity," to recover the costs of the action. The Court finds that the Parties litigated this matter in good faith, and therefore it would not be equitable to award costs to Defendants.  Moreover, the Court considers the enormous economic disparity between the parties.  Defendants conduct a world-wide, sophisticated and highly profitable beverage industry.  Plaintiff, however ambitious, is a tiny bar operator who operates only part-time and on a shoestring.  The bar is not his primary occupation and is run for almost avocational

purposes.  Moreover, due to the untimely and tragic death of his beloved wife, which occurred shortly after the trial of this matter, the bar is now closed indefinitely.  Additionally, as discussed above, the Court concludes that his limited use of his logo as set out in Exhibit 1 does not infringe, dilute, or otherwise harm Defendants' mark.

54.    Further, and because the Court finds that Plaintiff's use of the words "Star Bock" and "Starbock" alone violate numerous state and federal laws but that his primary logo, the "Star Bock Beer" logo with the "Born in Galveston" wording as shown in Plaintiff's Exhibit 1, does not violate any trademark or unfair competition laws, the Court declines to award attorneys' fees to either Party under the "exceptional case" standard set out in the statute.  *See* 15 U.S.C. § 1117(a). Each Party is to bear its own taxable costs, expenses and attorney's fees incurred herein to date.

55.    To the extent any Finding of Fact constitutes a Conclusion of Law, it is adopted as such.  To the extent any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.

Contemporaneous with the entry of its Findings of Fact and Conclusions of Law, the Court will enter its Final Judgment as to all controversies existing herein.

**IT IS SO ORDERED.**

**DONE** this the 19th day of August, 2005, in Galveston, Texas.

Samuel B. Kent
United States District Judge